[Crim. No. 3713.  In Bank.—February 28, 1934.]

THE  PEOPLE,  Respondent,  v.  FRED  HAYES  et al., Defendants;  WILLIAM  DULIN,  Appellant.

J. P. Guerin and A. H. McConnell for Appellant William Dulin.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

THE COURT.—A hearing was granted in this case, after decision by the District Court of Appeal, Second Appellate District, Division Two, in order to give full consideration to the contention of appellant Dulin that the verdict as to him was contrary to the evidence. Upon a careful examination of the whole record, we have reached the conclusion that the evidence was sufficient to sustain the verdict. We therefore adopt the opinion of Mr. Justice *pro tem.* Archbald as the opinion of this court. It reads as follows:

222

"Appellant and Fred Hayes were jointly charged with the murder of Mickey Erno, by an information filed on February 23, 1933. Both were found guilty of murder in the first degree, with recommendation of life imprisonment. From the judgments of conviction entered on said verdict and from the orders denying their respective motions for a new trial both defendants appealed. Subsequently, on motion of the attorney-general, the appeal of Hayes was dismissed and the judgment and order appealed from by him were affirmed under section 1253 of the Penal Code.

"Appellant Dulin urges (1) that the verdict is contrary to the evidence, (2) that the court misdirected the jury in matters of law, (3) that the court erred in giving as well as in refusing certain instructions, and (4) in refusing to grant him a new trial on the ground of newly discovered evidence.

"The evidence shows that a body was found at about 9:50 p. m. of January 17, 1933, from five to ten feet from the north end of a bridge located on East Spring Street, about one mile west of the town of Los Alamitos and three or four miles east of Long Beach. It was identified as the body of Mickey Erno and was still warm when found. Erno died as the result of gunshot wounds.

"(1) Appellant contends that the evidence fails to connect him with the murder charged. Without going into the evidence in detail, it is sufficient to say that the jury might well conclude therefrom that some time before the murder two men, one of whom was a friend of appellant for several years, brought a diamond ring to defendant Hayes to be disposed of; that Hayes gave it to Erno for disposition and that Erno and one 'Socks' Brewer borrowed or raised a sum of money thereon and divided it between themselves; that Hayes thereafter spent some time looking for the ring and Brewer. That Dulin was interested with him appears from the testimony of the witness Mrs. Proctor, who went to Dulin's apartment the afternoon of the day of the murder to find Hayes, to see 'if he had gotten Mickey's [Erno's] car'. 'Then, said she, 'we drifted into a conversation about them using the car to find Socks, and they was trying to locate him on account of the ring.' Dulin said he 'didn't like the way things were going', and 'I told him that I knew Mickey was trying to find him

[Socks] . . . right away' and that Mickey 'had been awful cross since this thing had come up'; that Dulin said there was 'something crooked about the ring' and that 'he didn't know what it was, didn't like the way Mickey was acting', and 'asked me if I cared if he [Erno] went away'. The evidence shows also that Hayes, Dulin and Erno were together in Dulin's apartment from about 6:30 to about 8 o'clock the night of the murder, at which time one Josephine Bauer, who was there to meet a marine named Jess Holder, was taken by Hayes in Mrs. Proctor's car, which she brought over at the request of Hayes, to a street car, on which Mrs. Proctor and Miss Bauer went to the Ritz Hotel, conducted by Mrs. Proctor; that prior to that time a woman called 'Nell', who lived with Dulin, was taken to the home of Dulin's mother; that Jess Holder found the three in Dulin's apartment when he arrived at about 7 o'clock p. m.; that he stayed twenty minutes or so and then left, Dulin giving him his key to the apartment, telling him to use it if he came back; that when Holder returned at about 9 o'clock p. m. he found a note telling him that Miss Bauer was at the Ritz Hotel. From the foregoing circumstances the jury could only conclude that the three men were left in the apartment and that Mrs. Proctor's car was in the street for their use. Hayes and Dulin appeared at the Ritz Hotel shortly after 10 o'clock. Hayes, a nervous individual and evidently more nervous than usual, came in first and then called Dulin in. Miss Bauer was taken by the two to Dulin's mother's home, where 'Nell' put on her coat and went with the men to the Dulin apartment. The following Saturday evening Dulin came to Mrs. Proctor's and wanted to know if she was 'for Shorty' (Hayes), who had been placed under arrest. He told her they were trying to get a car to go down to see Jess Holder at San Diego, to 'prove an alibi'—prove that 'Shorty' was with Jess, spending the evening in question at 'speakeasies'. At that time, Mrs. Proctor testified, she said to Dulin: 'Well, Bill, I would rather you told them that you boys had my car; and he said, "No, don't tell them we had your car. Don't tell them about your car." I said, "Well, if Shorty pleads guilty he will tell them that he had my car," and he said "Shorty will never plead guilty. He will never talk. . . ." I kept on insisting that they should tell them they had my

car that night. Q. What night? A. On the night of the 17th" '—the night of the murder. In addition to the foregoing, some cartridges were found in a vest belonging to Dulin, which corresponded in caliber, and the lead bullets as to color and character of grease in the cannelures, with those taken from Erno's body.

"Without going further into the evidence we will say that in our opinion it sufficiently connects appellant with Hayes and Erno at the time the murder must have been committed, and supports the conclusion that, believing Erno had 'double crossed' them in the disposition of the ring they evened things up in their own way. The jury having determined the facts in the first instance by their verdict, which was approved by the trial judge when he denied the motion for a new trial, we cannot set it aside on appeal on the ground urged here, unless it clearly appears that upon no hypothesis whatever is there substantial evidence to support such conclusion. (*People* v. *Tom Woo*, 181 Cal. 315 [184 Pac. 389].) We cannot so conclude, after a careful examination of all the evidence.

"(2) In view of the evidence in this case we see no error in giving the instruction to the effect that all persons concerned in the commission of a felony, whether they directly commit the act or merely aid and abet its commission, can be prosecuted, tried and punished as principals. If there had been no evidence tending in the slightest degree to establish a confederation between Hayes and Dulin to do the act it would have been error to give such instruction. (*People* v. *Silva*, 48 Cal. App. 728 [192 Pac. 330].)

"(3) Appellant complains of the refusal of the court to give a requested instruction to the effect that the burden of proving the presence of himself at the scene of the murder devolved upon the prosecution, and that the burden was not upon him to prove that he was not there. In our opinion such requested instruction conflicts with sections 31 and 971 of the Penal Code, stating (a) who are principals and (b) abrogating the distinction between an accessory before the fact and a principal in felony cases, respectively. The court properly instructed the jury as to the burden of proof, the presumption of innocence and reasonable doubt, and in our opinion the instruction requested was

properly refused. ■ And in view of what we have heretofore said, no error was committed in refusing to direct a verdict in favor of appellant.

■ "(4) On the motion for a new trial the affidavit of defendant Hayes was presented as newly discovered evidence. In this affidavit Hayes in effect assumed all responsibility for the perpetration of the murder, stating that he killed Erno on the bridge and then dropped the body over the side. There were counteraffidavits from which the court could well conclude that this latter statement was impossible. The court also heard all the evidence, including that of Hayes, and was justified in ruling that the result of the trial could not have been changed if Hayes had so testified instead of telling the story he did. We see no abuse of discretion in denying the motion."

Judgment and order affirmed.